UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

SUNY VICTOR,  :  CASE NO. 1:14-CV-2731
:
      Plaintiff,  :
:
vs.  :  OPINION & ORDER
:  [Resolving Doc. Nos. 20, 24, 26, 27,
JAMES GILLETTE, *et al.*,  :  28, 30, 31, 32, 34, 35, 36, and 38]
:
      Defendants.  :
:

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

### Introduction and Allegations

On January 20, 2015, this Court entered an order affording *pro se* plaintiff Suny Victor an opportunity to file an amended complaint in her §1983 action in accordance with *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983). She filed an Amended Complaint on February 5, 2015.

In her Amended Complaint, the plaintiff alleges the defendants are liable to her under 42 U.S.C. §1983 in connection with her arrest and prosecution for OVI following a one-vehicle car accident in which she was involved. At approximately 11:00 p.m. on January 11, 2014, she was driving a vehicle that crashed in the City of Chardon, Geauga County. (Am. Complt., ¶11.) Public records of the Geauga County Municipal Court show she was subsequently arrested by Ohio State Trooper John Nemastil for suspicion of driving under the influence of alcohol in

connection with the accident and later convicted by a jury of operating a vehicle under the influence of alcohol and failure to control.  *See State v. Victor*, 2014 TR-C 00144 (Chardon Municipal Court).  The plaintiff contends all of the defendants are liable to her for "blatantly violating and/or conspiring to violate [her] clearly established rights Federal Civil Rights" in responding to her accident and arresting and prosecuting her.  (Am. Complt., ¶¶7-10.)   She seeks damages and declaratory and injunctive relief.

First, the plaintiff alleges that unidentified officers and dispatchers of the "Chardon PD" and "Geauga Co. Sheriff Dept" were "grossly negligent," subjected her to "cruel and unusual punishment," and violated her "Federal Equal Protection Rights (based upon her Gender/Sex/Race)" by failing and refusing to respond to emergency calls she and others made on the night of her accident that were forwarded to them by the Kirtland PD. (*Id.*, ¶¶11,12.)  She alleges Chardon Police Chief Tim McKenna and Geauga County Sheriff Daniel McClelland are liable for the conduct of the unknown officers and dispatchers in responding to the emergency calls.  She alleges McKenna and McClelland violated her 1st, 4th, 5th, 6th, 8th, and 14th Amendment rights by "hiring, failing to train, and/or discipline" their subordinates regarding emergency calls.  (*Id.*, ¶¶14, 15.)

Second, she alleges State Trooper Nemastil, who responded at that scene of her accident, is liable for a list of alleged misconduct.  He allegedly: "got lost" on his way to the accident; had to repeatedly ask Kirtland police officers outside their jurisdiction what city he was in; told the tow truck driver the plaintiff was being arrested for OVI before OVI tests were conducted; used "unreasonable excessive force (non-consensual sexual gra[t]ification/assault)" against her when questioning and searching her incident to arrest; told her that her commercial driver's license

-2-

would be suspended if she refused a breathalyzer test; told a law enforcement officer in the Chardon PD booking area that plaintiff's passenger was more drunk than she was but did not conduct any field sobriety test on him; and knew or should have known that his actions violated "Ohio State Policy/Procedure/Custom." (*Id.*, ¶12).

Finally, she alleges Defendant James Gillette, the county prosecutor in her criminal case "violated her Federal Equal Protection Right to a Fair Jury Trial" by intentionally allowing "false/perjured" testimony to go uncorrected at trial, tampering with witnesses in the case by "advising Co-Defendants not to respond to subpoena at Plaintiff's Jury Trial," and suppressing exculpatory evidence. (*Id.*, ¶16.)

Defendants Gillette, McKenna, and Nemastil have each filed a motion to dismiss the plaintiff's Amended Complaint against them pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. Nos. 26, 27, and 30.) Defendant McClelland has filed a motion for summary judgment (Doc. No. 28.) These dispositive motions are ripe for decision as the plaintiff has now filed briefs opposing all of them, thereby mooting prior motions she filed (Doc. No. 31, 32) seeking extensions of time regarding two of them.

For the reasons stated below, the defendants' motions are granted, and this case is dismissed.

### Standards of Review

A complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) if it fails to state claim upon which relief can be granted when its factual allegations are presumed to be true and reasonable inferences are made in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). To

survive a dismissal under Rule 12(b)(6), the complaint "must present 'enough facts to state claim to relief that is plausible on its face.'" *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although pleadings and documents filed by *pro se* litigants are "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), a *pro se* complaint must still satisfy the pleading standards of Rule 12(b)(6) and set forth "sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed. App'x 784, 786 (6th Cir. 2011)(emphasis in original). A claim is plausible when the plaintiff "pleads sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, in order to survive summary judgment, the non-moving party must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247–48 (1986). The non-moving party must do more than show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, she must cite to the particular parts of the record showing a material issue of fact, or showing that the materials cited by the defendant do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and construe all reasonable inferences in her favor.

**Analysis**

**1. Defendant Gillette**

Prosecutor Gillette moves to dismiss the plaintiff's Amended Complaint on the basis of prosecutorial immunity. In *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), the Supreme Court held that a prosecutor is entitled to absolute immunity from a civil suit for damages pursuant to §1983 "in initiating a prosecution and in presenting the State's case." The Court held a prosecutor is absolutely immune "when he acts with within the scope of his prosecutorial duties." *Id*. at 420.

All of the conduct of Prosecutor Gillette of which the plaintiff complains in her Amended Complaint, and in her brief opposing Gillette's motion to dismiss, constitutes conduct falling "within the scope of" Gillette's prosecutorial duties in the plaintiff's OVI case. (*See* Am. Complt., at ¶¶16, 17; Doc. No. 35 at 6-7.) Accordingly, Prosecutor Gillette is entitled to absolute immunity from the plaintiff's §1983 suit and is entitled to dismissal of her Amended Complaint against him.

**2. Defendants McKenna and McClelland**

Defendant McKenna moves to dismiss the plaintiff's Amended Complaint, and Defendant McClelland moves for summary judgment, on the basis that the plaintiff's allegations

are likewise insufficient to impose liability on them.  The plaintiff sues McKenna and McClelland in their individual and official capacities under a failure-to-train theory.  Government officials may not be held liable under §1983 for unconstitutional behavior of subordinates solely on the basis of *respondeat superior*.  See *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  Instead, supervisory liability under §1983 must be premised on active unconstitutional behavior, not a failure to act.  See *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  To hold a supervisor individually liable based on a failure to train, control, or supervise a subordinate, the supervisor must have "either encouraged the specific incident of misconduct or in some other way directly participated in it."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  The plaintiff does not allege that either Chief McKenna or Sheriff McClelland actively encouraged or directly participated in specific incidents of misconduct of city or county emergency dispatchers.  Accordingly, McKenna and McClelland cannot be held individually liable for the alleged misconduct of the dispatchers (even assuming that their conduct violated the plaintiff's civil rights).

An "official-capacity" suit against a government official is treated as a suit against the government entity itself.  *S.L. v. Pierce Township Bd. of Trustees*, 771 F.3d 956, 962 (6th Cir. 2014).  To impose liability under §1983 on a government entity based on a supervisor's failure to train or supervise subordinates, the plaintiff must show that (1) employees of the government entity committed a constitutional violation (2) due to a lack of training by municipal policy makers (3) who are "deliberately indifferent" to a need for training in the area which would have avoided the constitutional violation.  *Hunt v. Applegate*, 91 F.3d 143, 1996 WL 428399, at * 2 (6th Cir. July 30, 1996).  The plaintiff must show that the alleged inadequate training is "closely

related to" or "actually caused" the plaintiff's injury. *See Hill v. McIntrye*, 884 F.2d 271, 275 (6th Cir. 1989).

"Obviously, the first thing required [to establish a policy of inadequate training] is a constitutional event, *i.e.*, an underlying constitutional violation that the failure to train causes." *Hunt*, 1996 WL 428399, at * 2. "Some kind of wrong of constitutional dimension must be present." *Id*.

The plaintiff has not alleged an underlying wrong of a "constitutional dimension" committed by city and county emergency dispatchers. She alleges the dispatchers subjected her to "cruel and unusual punishment" and violated her "Federal Equal Protection Rights" in handling emergency calls relating to her accident, but her allegations are insufficient to state a viable constitutional claim on either of these bases. She has not alleged a violation of the Eighth Amendment's protection against cruel and unusual punishment because this protection applies only after an individual has been convicted. *See e.g., Bass v. Robinson*, 167 F.3d 1041, 1048–49 (6th Cir.1999). "The guarantee of equal protection of the law directs that all persons similarly circumstanced shall be treated alike." *Disabled American Veterans v. Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir. 1992) (internal quotations omitted). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citing *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). The plaintiff has not alleged any facts indicating that emergency dispatchers treated calls regarding

her accident differently as compared to a "similarly-situated person," or that they handled the calls in her case as they did "because of" or "based on" her gender or race.  The plaintiff's allegations of inadequate emergency response do not implicate a fundamental right.  *See, e.g., DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 196–97 (the State generally has no constitutional duty to protect or aid individuals).  Accordingly, the plaintiff has not alleged a cognizable "equal protection" violation.

Beyond failing to allege an underlying constitutional violation, the plaintiff's allegations are insufficient to state a failure-to-train policy claim against McKenna and McClelland because she does not allege that, or how, she suffered any injury as a result of the handling of emergency calls in her case.  In addition, she does not allege facts suggesting that either McKenna or McClelland were "deliberately indifferent" to a need for training in that area.  The plaintiff's own, conclusory allegations that the Chardon PD and Geauga County Sheriff's Department inadequately responded to emergency calls in her case are insufficient to establish a city or county-wide policy or custom.  *See, e.g,, Mitchell v. City of Hamilton*, No. 1: 11 CV 764, 2012 WL 701173 (S.D. Ohio March 1, 2012) (holding that allegations of a single set of wrongful acts directed towards toward the plaintiff only are insufficient to demonstrate a "policy" of unconstitutional behavior).  *See also Hunt*, 1996 WL 428399, at * 2 ("[b]ad facts or a single outrageous event is insufficient" to impose supervisory liability under a failure-to-train theory).

In sum, the plaintiff's allegations are insufficient to support a plausible failure-to-train claim against Defendants McKenna and McClelland under §1983, in either their individual or official capacities, and their dispositive motions will accordingly be granted.

**3. Defendant Nemastil.**

Finally, Defendant Nemastil contends the plaintiff's Amended Complaint fails to state a plausible claim against him under §1983.

The Sixth Circuit "has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right." *Terrance v. Northville Reg. Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (emphasis in original).  "A plaintiff must allege 'with particularity' all material facts to be relied upon when asserting that a governmental official has violated a constitutional right." *Id*.

Trooper Nemastil contends the plaintiff's Amended Complaint fails to meet these requirements because she has not alleged any specific constitutional provision or provisions she contends he violated, or facts demonstrating that his conduct violated her rights.  (*See* Doc. No. 30 at 6.)  He contends her allegations are insufficient to state a claim to the extent she alleges he violated her rights to "due process," "equal protection," and access to the courts.  (*See id*. at 6-9.)

Upon review, the Court agrees that the plaintiff has failed to allege a plausible §1983 claim against Trooper Nemastil.  Although the plaintiff refers generally to a number of constitutional provisions throughout her Amended Complaint, she does not allege the specific constitutional provision or provisions she contends Trooper Nemastil violated by his alleged conduct.  Paragraph 12 of her Amended Complaint, in which she sets forth the alleged wrongful conduct of Trooper Nemastil, does not mention or refer to any constitutional provision.

Most of the conduct the plaintiff alleges in paragraph 12 does not appear to violate any federal civil right. For example, the Court does not discern any federal civil rights violation stemming from the plaintiff's allegations that Trooper Nemastil "got lost" on his way to her plaintiff's accident and asked other police officers what city he was in. The only conduct of Trooper Nemastil the plaintiff sets forth in paragraph 12 that the Court can independently discern to allege a constitutional violation is her conclusory allegation that Trooper Nemastil used unreasonable excessive force when searching her incident to her arrest. The use of excessive force by law enforcement officials in effectuating an arrest may give rise to a claim under §1983 for violating the Fourth Amendment. *See Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999). The plaintiff's allegations, however, are insufficient to plead a plausible "excessive force" claim.

Claims alleging excessive force brought against law enforcement officials are analyzed under an "objective reasonableness" standard and require careful evaluation of all of the facts and circumstances of the particular case. *Id.*, citing *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

The plaintiff's allegations of excessive force are entirely vague and entirely conclusory. She alleges Trooper Nemastil used "unreasonable excessive force (non-consensual sexual gra[t]ification/assault)" by searching her three times and "feeling her up" during the course of

-10-

her OVI arrest. (Am. Complt., ¶12(D).) Her conclusory and vague allegations, devoid of further factual enhancement, are simply insufficient to give rise to a plausible inference that Trooper Nemastil sexually assaulted or used unreasonable excessive force against her in effectuated her arrest. Accordingly, Trooper Nemastil is entitled to a dismissal of her Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**Conclusion**

For the reasons stated above, the motions of Defendants Gillette, McKenna, and Nemastil to dismiss the plaintiff's Amended Complaint (Doc. Nos. 26, 27, and 30), and the motion of Defendant McClelland for summary judgment (Doc. No. 28), are granted.

All of the remaining pending motions the plaintiff has filed with the Court (including a motion to "stay proceedings/abeyance pending exhaustion of state appellate court remedies for reversal" (Doc. No. 20); "objections and motions to strike" briefs and motions of the defendants (Doc. Nos. 24, 35, 36, and 38); and a motion for leave to "amend/supplement claim to include" the judge in her OVI case (Doc. No. 34)) are denied. There is no reason to stay this action pending plaintiff's appeal of her state conviction, and it would futile to allow the plaintiff leave to amend her complaint to add the judge in her OVI case as a defendant. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 9 (1991) (a judge is immune from suits for money damages).

IT IS SO ORDERED.


Dated: April 15, 2015                    *s/    James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE

-11-